## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

TECUMSEH PRODUCTS
COMPANY

               Plaintiff,

v.

KULTHORN KIRBY
PUBLIC COMPANY LTD. and
ELCO REFRIGERATION
SOLUTIONS, LLC

               Defendants.

Case No. 2:17-cv-10249-PDB-RSW

Paul D. Borman
United States District Judge

R. Steven Whalen
United States Magistrate Judge

**ANSWER TO COMPLAINT AND
COUNTERCLAIM**

Now comes Defendants Kulthorn Kirby Public Company Ltd. and Elco Refrigeration Solutions, LLC (Kulthorn or Defendants), by and through its attorneys, Revision Legal PLLC, and for its Answer to the Complaint of Tecumseh Products Company (Tecumseh or Plaintiff) hereby states as follows:

### NATURE OF THE ACTION

1.     This is an action for trademark infringement and unfair competition under Federal and Michigan law.

**Answer to Allegation 1.**

No answer is necessary.

2.     Tecumseh brings this action to prevent and halt consumer confusion

and mistake as to the source, affiliation, or sponsorship of Tecumseh and Tecumseh's goods, on the one hand, and KKC and KKC's goods, on the other hand, stemming from KKC's and Elco's infringement of Tecumseh's trademark rights as part of KKC's and Elco's efforts to wrongly profit and otherwise benefit from the goodwill Tecumseh has established in Tecumseh's trademarks.

**Answer to Allegation 2.**

Defendants deny that they have infringed upon Plaintiff's trademark rights. To the extent any further answer is required, the remaining allegations are denied.

3.       Tecumseh seeks both injunctive and monetary relief for KKC's and Elco's infringement of Tecumseh's trademark rights.

**Answer to Allegation 3.**

Defendants deny that they have infringed upon Plaintiff's trademark rights. To the extent any further answer is required, the remaining allegations are denied.

## THE PARTIES

4.       Plaintiff Tecumseh is a corporation organized under the laws of the state of Michigan with its principal place of business in Ann Arbor, Michigan.

**Answer to Allegation 4.**

Admitted.

5.       Upon information and belief, Defendant KKC is a Thailand company with its principal place of business in Bangkok, Thailand.

2

**Answer to Allegation 5.**

Admitted.

6.        Upon information and belief, Defendant KKC also owns, controls, and is affiliated with numerous other entities. Following is a company structure chart (obtained from the webpage located at http://compressor.kulthorn.com/about/subsidiaries.aspx) showing these KKC affiliated entities.

**Answer to Allegation 6.**

Defendant KKC admits that it is associated with various other entities, but denies Plaintiff's allegations in this paragraph because they lack specificity and Defendant lacks sufficient information to form a belief as to the truth of the allegations contained therein.

7.        Upon information and belief, Defendant KKC itself is owned, controlled by, and affiliated with numerous other entities throughout the world. Following is a company structure chart (obtained from the webpage located at http://www.kulthorn.co.th/companygroup.php?page=aboutus&&menu=companyg roup) showing these KKC affiliated entities (collectively, the "KKC Affiliates").

**[Picture omitted]**

**Answer to Allegation 7.**

Defendant KKC admits that it is associated with various other entities, but

3

denies Plaintiff's allegations in this paragraph because they lack specificity and Defendant lacks sufficient information to form a belief as to the truth of the allegations contained therein.

8.      Tecumseh currently does not know the nature and extent of involvement, if any, of the KKC Affiliates in the allegations and claims made in this Complaint.

**Answer to Allegation 8.**

No answer is necessary.

9.      Upon information and belief, Defendant Elco is a limited liability company organized under the laws of the State of California, with its principal place of business 2554 Commercial Street, San Diego, California.

**Answer to Allegation 9.**

Admitted.

10.     As shown in the following Elco webpage (obtained from http://www.elcors.com/), Elco claims it was founded in 2011 and is the "Exclusive Master Distributor for Kulthorn products."

**[Picture omitted]**

**Answer to Allegation 10.**

Admitted.

11.     Although Elco claims it was founded in 2011, according to the online records of the California Secretary of State, Elco was registered on February 19, 2014.

**Answer to Allegation 11.**

Admitted.

12.     On information and belief, Idin Rafiee a/k/a Dean Rafiee ("Idin") is an individual residing in the State of California.

**Answer to Allegation 12.**

Admitted.

13.     According to the online records of the California Secretary of State, Idin is the agent for service of process on Elco.

**Answer to Allegation 13.**

Admitted.

14.     Upon information and belief, and as shown in the following Elco webpage (obtained from http://www.elcors.com/) and Idin's apparent Twitter social media pages, Idin is a key Elco employee and driver of KKC compressor sales in the United States.

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**Answer to Allegation 14.**

Admitted.

15.     On information and belief, Idin owns and controls the actions of

Elco.

**Answer to Allegation 15.**

Admitted.

16.     Upon information and belief, Pasha International Corp. ("PashaCo")

was a corporation organized under the laws of the State of California with its

principal place of business at 2554 Commercial Street, San Diego, California.

**Answer to Allegation 16.**

Defendants lack sufficient information to form a belief as to the truth of the

allegations in this paragraph and deny the same.

17.     According to the online records of the California Secretary of State,

Idin was the agent for service of process on PashaCo.

**Answer to Allegation 17.**

Defendants lack sufficient information to form a belief as to the truth of the

allegations in this paragraph and deny the same.

18.     According to a federal criminal indictment filed January 8, 2014

against Idin, PashaCo and others ("2014 Indictment"), Idin founded PashaCo in

2011.

6

**Answer to Allegation 18.**

Denied.

19.     According to the 2014 Indictment, Idin operated PashaCo to carry out a conspiracy to evade trade sanctions against Iran by unlawfully procuring more than $8 million in goods – primarily cooling equipment – for customers in Iran. Attached hereto as Exhibit 1 is a true and accurate copy of the 2014 Indictment.

**Answer to Allegation 19.**

Denied.

20.     According to the 2014 Indictment, Idin's relationship with KKC dates back many years and, between late 2011 and 2013, landed Idin and others approximately $8 million dollars in deals for the purchase of hermetic compressors shipped to Iran.

**Answer to Allegation 20.**

Denied.

21.     According to the Judgement in a Criminal Case dated May 20, 2016 ("Criminal Judgment") and Order of Criminal Forfeiture dated May 13, 2016 ("Forfeiture Order") entered after the Indictment, PashaCo pleaded guilty to conspiracy to export to an embargoed country, forfeited $874,940.61 to the United States representing the proceeds of the offense of conviction, and was ordered to three (3) years of probation. A mandatory condition of PashaCo's

7

probation is that it "shall not commit another federal, state or local crime."
Attached hereto as Exhibit 2 is a true and accurate copy of the Criminal Judgment
and the Forfeiture Order.

**Answer to Allegation 21.**

Defendants lack sufficient information to form a belief as to the truth of the
allegations in this paragraph and deny the same.

22.     On information and belief, Elco is effectively a continuation of
PashaCo.

**Answer to Allegation 22.**

Denied.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant
to 28 U.S.C. §§1331 and 1338, and 15 U.S.C. § 1121, and has supplemental
jurisdiction pursuant to 28 U.S.C. § 1367.

**Answer to Allegation 23.**

Admitted.

24.     Tecumseh's claims are based on the Lanham Act, 15 U.S.C. § 1051
*et seq.*, and substantial and related claims under the statutory and common law of
the state of Michigan.

**Answer to Allegation 24.**

8

Admitted.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of property that is the subject of the action is situated in this District.

**Answer to Allegation 25.**

Admitted.

26.     Personal jurisdiction is proper in this Court because KKC and Elco regularly conduct business, directly and indirectly, within the state of Michigan.

**Answer to Allegation 26.**

Admitted.

27.     KKC's and Elco's unlawful acts that are the subject of this Complaint include acts that were purposefully directed towards the State of Michigan and within this District, and KKC's products are offered in this District.

**Answer to Allegation 27.**

Admitted.

28.     Personal jurisdiction is also proper in this Court because KKC and Elco advertise and sell KKC products in the state of Michigan and in this District, which advertising and products are the subject of this litigation.

**Answer to Allegation 28.**

9

Admitted.

## FACTUAL ALLEGATIONS

### Tecumseh and the AE / AE2 and AW Series Compressors

29.    Tecumseh engineers a full-line of hermetically-sealed compressors for residential and specialty air conditioning, home refrigerators and freezers, and commercial refrigeration. Tecumseh also offers a complete line of indoor and outdoor condensing units, evaporator coils, heat pumps, complete refrigeration systems and authorized spare parts. Products are sold to Original Equipment Manufacturers, Service Technicians and Exporters. Tecumseh's company-wide dedication to quality control has earned Tecumseh the highest quality rating from major refrigeration and air conditioning manufacturers.

**Answer to Allegation 29.**

Defendants admit that Tecumseh engineers a full-line of compressors that are sold to OEM manufacturers, service technicians, and exporters, but Defendants deny that Tecumseh has a "company-wide dedication to quality control." Defendants lack sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and deny the same.

30.    Since its founding, Tecumseh has led the way with improved products and service in support of the industry it serves. Tecumseh developed the

10

first "hermetic" compressor for consumer refrigerators in 1937. As the name

Tecumseh became synonymous with commercial refrigeration and central home

air conditioning, Tecumseh expanded its product line to include automotive air

conditioning compressors in 1953. Tecumseh's reputation for innovation was

further enhanced in 1959 when Tecumseh developed the first high-speed

hermetically- sealed compressor for commercial applications.

**Answer to Allegation 30.**

Defendants lack sufficient information to form a belief as to the truth of the

allegations in this paragraph and deny the same.

31.     In 1960, Tecumseh first introduced its "AE" series compressors to

the market with seven (7) basic models. In 1967, Tecumseh released seven (7)

additional models to its "AE" series compressors. Today, Tecumseh offers over

one hundred (100) models in its "AE" series compressors.

**Answer to Allegation 31.**

Defendants lack sufficient information to form a belief as to the truth of the

allegations in this paragraph and deny the same.

32.     In 1986, Tecumseh introduced its "AW" series compressors to the

market with twenty-two (22) basic models. Today, Tecumseh offers over thirty-

five (35) models in its "AW" series compressors.

**Answer to Allegation 32.**

11

Defendants lack sufficient information to form a belief as to the truth of the allegations in this paragraph and deny the same.

33.    In 2011, Tecumseh introduced its "AE2" series compressors to the market with ten (10) basic models. Today, Tecumseh offers over one hundred (100) models in its "AE2" series compressors.

**Answer to Allegation 33.**

Defendants lack sufficient information to form a belief as to the truth of the allegations in this paragraph and deny the same.

34.    Tecumseh's AE / AE2 and AW series compressors are sold throughout the world, including the United States. To date, Tecumseh has sold over two hundred million (200,000,000) AE compressors throughout the world. Tecumseh has built a significant base of business selling and marketing compressors to Original Equipment Manufacturers which has resulted in service technicians and commercial contractors using Tecumseh AE/AE2 and AW replacement compressors.

**Answer to Allegation 34.**

Defendants lack sufficient information to form a belief as to the truth of the allegations in this paragraph and deny the same.

35.    Tecumseh has used AE/AE2 and AW on labels and tags for compressors, product packaging for compressors, and documents associated with

12

compressors throughout the world, including the United States. Tecumseh has also used AE/AE2 and AW in advertising for compressors throughout the world, including the United States.

**Answer to Allegation 35.**

Denied.

36.     Following are examples showing use of AE/AE2 and AW in association with Tecumseh compressors sold in the United States.

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**Answer to Allegation 36.**

Denied.

37.     Tecumseh's use of AE/AE2 in association with Tecumseh's AE/AE2 series compressors has created strong source identifying significance in the minds of United States consumers, namely, that AE/AE2 used in association with compressors indicates the compressors are sourced, affiliated, or sponsored by Tecumseh (the "AE Trademark").

**Answer to Allegation 37.**

Denied.

38.     Tecumseh's use of AW in association with Tecumseh's AW series compressors has created strong source identifying significance in the minds of United States consumers, namely, that AW used in association with compressors indicates the compressors are sourced, affiliated, or sponsored by Tecumseh (the "AW Trademark").

**Answer to Allegation 38.**

Denied.

39.     Tecumseh's use of AE2 in association with Tecumseh's AE2 series compressors has created strong source identifying significance in the minds of United States consumers, namely, that AE2 used in association with compressors indicates the compressors are sourced, affiliated, or sponsored by Tecumseh (the "AE2 Trademark").

**Answer to Allegation 39.**

Denied.

40.     Tecumseh's AE Trademark, AE2 Trademark and AW Trademark, are widely recognized and highly distinctive trademarks as a result of Tecumseh's longstanding use in association with compressors.

**Answer to Allegation 40.**

Denied.

14

41.     Tecumseh is the owner of United States Trademark Registration No. 5,072,832 for AE in association with "Electric compressors, compressors for commercial refrigeration and air conditioning applications" (the "AE Registration"). Attached hereto as <u>Exhibit 3</u> is a true and accurate copy of the foregoing registration from the U.S. Patent and Trademark Office ("USPTO") database.

**Answer to Allegation 41.**

Defendants admit that the alleged registration number exists, but deny that Plaintiff is the owner of the marks reflected in the registration.

42.     Tecumseh is the owner of United States Trademark Registration No. 5,072,835 for AW in association with "Electric compressors, compressors for commercial refrigeration and air conditioning applications" (the "AW Registration"). Attached hereto as <u>Exhibit 4</u> is a true and accurate copy of the foregoing registration from the USPTO database.

**Answer to Allegation 42.**

Defendants admit that the alleged registration number exists, but deny that Plaintiff is the owner of the marks reflect in the registration.

43.     Tecumseh is the owner of United States Trademark Registration No. 5,072,834 for AE2 in association with "Electric compressors, compressors for commercial refrigeration and air conditioning applications" (the "AE2

15

Registration"). Attached hereto as <u>Exhibit 5</u> is a true and accurate copy of the foregoing registration from the USPTO database.

**Answer to Allegation 43.**

Defendants admit that the alleged registration number exists, but deny that Plaintiff is the owner of the marks reflected in the registration.

44.     The AE Trademark, AE2 Trademark and AW Trademark are very valuable to Tecumseh.

**Answer to Allegation 44.**

Denied.

45.     Tecumseh has enjoyed tremendous success in its sales of its AE series, AE2 series and AW series compressors advertised and sold in association with the AE Trademark, AE2 Trademark and AW Trademark in the United States.

**Answer to Allegation 45.**

Denied.

46.     Tecumseh has enjoyed millions of dollars of sales AE series, AE2 series and AW series and compressors in the United States in the years and decades since they were released.

**Answer to Allegation 46.**

Defendants lack sufficient information to form a belief as to the truth of the allegations in this paragraph and deny the same.

16

### KKC'S and Elco's Acts of Infringement and Unfair Competition

47.     On information and belief, KKC was established on March 24,

1980, to operate as a manufacturer and seller of reciprocating compressors for

refrigeration products, including refrigerators, freezers, commercial refrigerators

and air conditioning products. KKC claims it is the first motor compressor

manufacturer in Thailand and was listed in the Stock Exchange of Thailand on

February 22, 1991 in the name of Kulthorn Kirby Public Company Limited or

"KKC".

**Answer to Allegation 47.**

Admitted.

48.     KKC is well familiar with Tecumseh and Tecumseh's products.

Indeed, KKC was a party to several manufacturing, sales and lease agreements

with Tecumseh during the 1980s.

**Answer to Allegation 48.**

Admitted.

49.     The agreements between Tecumseh and KKC expired long ago.

**Answer to Allegation 49.**

Defendants admit that Tecumseh terminated the agreements between the

parties, but deny that the agreements expired.

50.     Notwithstanding the expiration of the agreements between

17

Tecumseh and KKC, outside the United States, over time KKC has been known to use Tecumseh's TECUMSEH mark and design mark **[Picture omitted]** ("Indian Design") without authorization from Tecumseh and in defiance of Tecumseh's demands to cease such usage. For example, following is an image featured on KKC's website (available at http://kulthorn.co.th/home.php) showing KKC's prominent use of Tecumseh's TECUMEH mark and Indian Design on a building believed to be located in Thailand.

**[Picture omitted]**

**Answer to Allegation 50.**

Denied.

51.     Now, KKC and Elco are using the marks AE and AW in association with compressors sold to, and advertising directed at, consumers throughout the world, including in the United States (collectively, the "Infringing Marks").

**Answer to Allegation 51.**

Denied.

52.     Upon information and belief, KKC started using the Infringing Marks in the United States in the first half of 2016, long after Tecumseh commenced use of the AE Trademark, AE2 Trademark and AW Trademark in the United States.

**Answer to Allegation 52.**

18

Denied.

53.     Tecumseh and KKC compete in the marketplace for the same consumers of compressors in the United States.

**Answer to Allegation 53.**

Denied.

54.     Upon information and belief, KKC advertises and sells compressors under the Infringing Marks throughout the state of Michigan and the United States.

**Answer to Allegation 54.**

Denied.

55.     Following are true and accurate screen captures (with the exception of inserted blue arrows) of KKC Internet webpages showing use of the Infringing Marks with KKC compressors that are accessible to consumers in the United States.

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**Answer to Allegation 55.**

Defendant KKC admits that the attached images appeared on the KKC

website but deny that the images show "use of the Infringing Marks…." Defendants lack sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and deny the same.

56.     In addition to KKC, following are true and accurate screen captures (with the exception of inserted blue arrows) of Internet webpages of Elco, which are accessible to consumers in the United States, showing use of the Infringing Marks with compressors.

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**Answer to Allegation 56.**

Defendant Elco admits that the attached images appeared on the Elco website but deny that the images show "use of the Infringing Marks…." Defendants lack sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and deny the same.

57.     KKC's and Elco's use of the Infringing Marks is not limited to the Internet. Following is an example of KKC's and Elco's use of the Infringing Marks in advertising distributed to consumers in the United States.

**[Picture omitted]**

**Answer to Allegation 57.**

Denied.

58.     KKC's use of the Infringing Marks extends to third party marketplaces as well, such as Amazon.com shown in the following, where a search results for "aecompressor" includes a KKC compressor presented as a "Kulthorn AE 4448Y-1 Refrigeration Compressor".

**[Picture omitted]**

**Answer to Allegation 58.**

Denied.

59.     As shown in the following screen capture of an Ebay listing, KKC's use of the Infringing Marks leads third parties to, likewise, reproduce the Infringing Marks with KKC compressors—and even intermingle such marks with Tecumseh's TECUMSEH trademark.

**[Picture omitted]**

**Answer to Allegation 59.**

Denied.

60.     Indeed, as shown in the following product literature, KKC and Elco are so dedicated to promoting consumer confusion that they slavishly mimicked Tecumseh's compressor model nomenclature in creating KKC's compressor

model nomenclature—all in an unabashed effort to free ride off the goodwill and consumer recognition of Tecumseh's AE Trademark, AE2 Trademark and AW Trademark.

**[Picture omitted]**

**[Picture omitted]**

**[Picture omitted]**

**Answer to Allegation 60.**

Defendants admit that both KKC and Elco use similar model nomenclature, but deny that they have used the nomenclature "in an unabashed effort to free ride off the goodwill and consumer recognition of Tecumseh's [trademarks]…." Defendants lack sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and deny the same.

61.     Upon information and belief, KKC and Elco have targeted Tecumseh authorized wholesalers and current OEM customers promoting what KKC and Elco call the Tecumseh AE or AW compressor.

**Answer to Allegation 61.**

Denied.

62.     Consumers have actually been confused by KKC's and Elco's use of the Infringing Marks. For example, consumers have communicated with Tecumseh seeking to order compressors advertised and sold by KKC and Elco

unlawfully using the Infringing Marks.

**Answer to Allegation 62.**

Denied.

63.     On March 10, 2016, Tecumseh sent a letter to KKC demanding that

KKC cease use of AE 444OY-1 in connection with compressors. A copy of the

March 10 letter Tecumseh sent to KKC is attached as Exhibit 6.

**Answer to Allegation 63.**

Admitted.

64.     On March 17, 2016, KKC responded stating it was "looking into"

the matter and would reach out "as soon as" KKC gathered more information. A

copy of the March 17 letter Tecumseh received from KKC is attached as Exhibit

7.

**Answer to Allegation 64.**

Admitted.

65.     Notwithstanding these assurances, KKC failed to timely respond,

prompting Tecumseh to send a letter to KKC on May 11, 2016, repeating

Tecumseh's demands and requesting a response within 14 days. A copy of the

May 11 letter Tecumseh sent to KKC is attached as Exhibit 8.

**Answer to Allegation 65.**

Denied.

23

66.     Ultimately, KKC (through legal counsel) represented that it would provide a substantive response to Tecumseh's demand by June 10, 2016.

**Answer to Allegation 66.**

Admitted.

67.     Notwithstanding this representation, KKC again failed to provide a substantive response as promised.

**Answer to Allegation 67.**

Denied.

68.     Upon information and belief, KKC and Elco continue to use the Infringing Marks in the United States in connection with compressors.

**Answer to Allegation 68.**

Denied.

69.     The natural, probable, foreseeable and actual result of KKC's and Elco's wrongful conduct is to cause consumer confusion, deception and mistake in the marketplace, to harm Tecumseh's business reputation and goodwill, and injure Tecumseh's relationships with existing and prospective consumers.

**Answer to Allegation 69.**

Denied.

70.     Upon information and belief, KKC's and Elco's wrongful conduct has resulted in increased sales of KKC's compressors while hindering the sales of

Tecumseh's compressors.

**Answer to Allegation 70.**

Denied.

71.    Tecumseh has sustained, and will continue to sustain, damages as a result of KKC's and Elco's wrongful conduct.

**Answer to Allegation 71.**

Denied.

72.    Upon information and belief, KKC and Elco are aware of Tecumseh's AE Trademark, AW Trademark, and AE2 Trademark, the goodwill associated with those trademarks, and that KKC and Elco cannot use the Infringing Trademarks as a source indicator for KKC's compressors.

**Answer to Allegation 72.**

Denied.

73.    As a party to prior agreements with Tecumseh, KKC has had exposure to Tecumseh's compressors, Tecumseh's intellectual property, and the goodwill Tecumseh has created in the AE Trademark, AE2 Trademark and AW Trademark through Tecumseh's use of those marks in association with compressors.

**Answer to Allegation 73.**

Denied.

25

74.     Indeed, by expressly referencing "The *Famous* AE 4440Y-1" (emphasis added) compressor, KKC's and Elco's advertising testifies to the enormous goodwill Tecumseh has established through Tecumseh's use of its AE Trademark in association with compressors.

**Answer to Allegation 74.**

Denied.

75.     Upon information and belief, KKC and Elco have engaged in these unlawful activities knowingly and intentionally, and with reckless disregard for Tecumseh's rights in the AE Trademark, AE2 Trademark and AW Trademark.

**Answer to Allegation 75.**

Denied.

76.     Indeed, based on the 2014 Indictment and information and belief, Elco (as the successor to PashaCo) and Idin are no strangers to activity involving KKC, and KKC compressors, reaching a criminal level of disregard for the laws of the United States.

**Answer to Allegation 76.**

Denied.

## COUNT I - FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

77.     Tecumseh incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

26

**Answer to Allegation 77.**

No answer is necessary.

78.     KKC and Elco have used in commerce a colorable imitation of Tecumseh's AE Trademark, AE2 Trademark and AW Trademark in connection with the sale, offering for sale, distribution, and/or advertising of goods likely to cause confusion, or to cause a mistake, or to deceive in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

**Answer to Allegation 78.**

Denied.

79.     Tecumseh's federal registrations on the Principal Register of the U.S. Patent and Trademark Office for the AE Trademark, AE2 Trademark and AW Trademark constitute *prima facie* and/or conclusive evidence of the validity of the marks, Tecumseh's ownership of the marks, and Tecumseh's exclusive right to use the marks in commerce in connection with the listed goods, pursuant to the Lanham Act, 15 U.S.C. § 1115.

**Answer to Allegation 79.**

Denied.

80.     KKC's and Elco's use of colorable imitations of Tecumseh's AE Trademark, AE2 Trademark and AW Trademark has been and continues to be done with the intent to cause confusion, mistake and to deceive consumers

27

concerning the source and/or sponsorship of KKC's goods.

**Answer to Allegation 80.**

Denied.

81.     As a direct and proximate result of KKC's and Elco's actions,
Tecumseh has suffered and will continue to suffer irreparable harm to Tecumseh's
valuable AE Trademark, AE2 Trademark and AW Trademark and to Tecumseh's
business, goodwill, reputation and profits.

**Answer to Allegation 81.**

Denied.

82.     Tecumseh will continue to be irreparably harmed unless KKC and
Elco are restrained from further infringement of Tecumseh's AE Trademark, AE2
Trademark and AW Trademark. An award of monetary damages alone cannot
fully compensate Tecumseh for its injuries and Tecumseh lacks an adequate
remedy at law.

**Answer to Allegation 82.**

Denied.

83.     KKC's and Elco's foregoing acts of infringement have been and
continue to be deliberate, willful and wanton, making this an exceptional case
within the meaning of 15 U.S.C. § 1117.

**Answer to Allegation 83.**

28

Denied.

84.     Tecumseh is entitled to a permanent injunction against KKC and

Elco, as well as all other remedies available under the Lanham Act, including, but

not limited to, compensatory damages, treble damages, disgorgement of profits

and costs and attorney's fees.

**Answer to Allegation 84.**

Denied.

## COUNT II - FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP (15 U.S.C. § 1125(a))

85.     Tecumseh incorporates and realleges, as if fully set forth in this

paragraph, the allegations of the foregoing paragraphs.

**Answer to Allegation 85.**

No answer is necessary.

86.     Tecumseh's AE Trademark, AE2 Trademark and AW Trademark

are well-established marks that serve to identify the goods sponsored, approved

by, authorized by, associated with, or affiliated exclusively for the use of

Tecumseh for its compressors.

**Answer to Allegation 86.**

Denied.

87.     KKC and Elco have knowingly used and continue to use colorable

imitations of Tecumseh's AE Trademark, AE2 Trademark and AW Trademark in connection with compressors that KKC and Elco advertise, promote and sell. KKC's and Elco's actions render this case exceptional within the meaning of 15 U.S.C.§1117(a).

**Answer to Allegation 87.**

Denied.

88.     Upon information and belief, prior to the KKC's and Elco's use of the Infringing Marks, KKC and Elco had actual and constructive knowledge of Tecumseh's use and ownership of the AE Trademark, AE2 Trademark and AW Trademark in connection with Tecumseh's compressors.

**Answer to Allegation 88.**

Denied.

89.     Upon information and belief, KKC and Elco have used and continue to use the Infringing Marks in association with compressors in a manner that is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of KKC, Elco and KKC's goods, and is likely to cause consumers erroneously to believe that KKC's goods have been authorized, sponsored, approved, endorsed, or licensed by Tecumseh or that KKC and Elco are affiliated with Tecumseh.

**Answer to Allegation 89.**

Denied.

90.     KKC's and Elco's use of the Infringing Marks in association with compressors constitutes false designation of origin and/or sponsorship and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**Answer to Allegation 90.**

Denied.

91.     As a direct and proximate result of KKC's and Elco's actions, Tecumseh has suffered and will continue to suffer irreparable harm to Tecumseh's valuable AE Trademark, AE2 Trademark and AW Trademark and Tecumseh's business, goodwill, reputation and profits.

**Answer to Allegation 91.**

Denied.

92.     Tecumseh will continue to be irreparably harmed unless KKC and Elco are restrained from further infringement of Tecumseh's valuable AE Trademark, AE2 Trademark and AW Trademark.

**Answer to Allegation 92.**

Denied.

93.     An award of monetary damages alone cannot fully compensate Tecumseh for its injuries, and Tecumseh lacks an adequate remedy at law.

**Answer to Allegation 93.**

Denied.

94.     The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

**Answer to Allegation 94.**

Denied.

95.     Tecumseh is entitled to a permanent injunction against KKC and Elco, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits and costs and attorney's fees.

**Answer to Allegation 95.**

Denied.

## COUNT III – STATE COMMON LAW TRADEMARK INFRINGEMENT

96.     Tecumseh incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

**Answer to Allegation 96.**

No answer is necessary.

97.     Tecumseh first used the AE Trademark to sell compressors at least as early as 1960.

**Answer to Allegation 97.**

Denied.

98.     Tecumseh first used the AW Trademark to sell compressors at least as early as 1986.

**Answer to Allegation 98.**

Denied.

99.     Tecumseh first used the AE2 Trademark to sell compressors at least as early as 2011.

**Answer to Allegation 99.**

Denied.

100.    The AE Trademark, AE2 Trademark and AW Trademark have become widely known throughout the United States and consumers have come to identify Tecumseh as the exclusive source of the goods to which the AE Trademark, AW Trademark, and AE2 Trademark are applied.

**Answer to Allegation 100.**

Denied.

101.    The AE Trademark, AE2 Trademark and AW Trademark are or have become distinctive.

**Answer to Allegation 101.**

Denied.

102.    KKC and Elco continue to advertise, promote, and sell goods using

33

the AE Trademark, AE2 Trademark and AW Trademark, or colorable imitations thereof, with knowledge of and with intentional disregard of Tecumseh's rights.

**Answer to Allegation 102.**

Denied.

103.     Such acts by KKC and Elco have caused and continue to cause confusion as to the source and/or sponsorship of KKC, Elco and KKC's goods.

**Answer to Allegation 103.**

Denied.

104.     KKC's and Elco's acts constitute willful infringement of Tecumseh's exclusive rights in the AE Trademark, AE2 Trademark and AW Trademark in violation of the common law of the state of Michigan and other states.

**Answer to Allegation 104.**

Denied.

105.     As a direct and proximate result of KKC's and Elco's conduct, Tecumseh has suffered irreparable harm to Tecumseh's valuable AE Trademark, AE2 Trademark and AW Trademark.

**Answer to Allegation 105.**

Denied.

106.     Tecumseh will continue to be irreparably harmed unless KKC and

34

Elco are restrained from further infringement of Tecumseh's AE Trademark, AE2 Trademark and AW Trademark.

**Answer to Allegation 106.**

Denied.

107.    An award of monetary damages alone cannot fully compensate Tecumseh for its injuries, and Tecumseh lacks an adequate remedy at law.

**Answer to Allegation 107.**

Denied.

## COUNT IV – STATE COMMON LAW UNFAIR COMPETITION

108.    Tecumseh incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

**Answer to Allegation 108.**

No answer is necessary.

109.    KKC and Elco have engaged in unfair competition under the common law of the state of Michigan and other states based on its acts as alleged in this Complaint.

**Answer to Allegation 109.**

No answer is necessary.

110.    KKC and Elco are liable to Tecumseh for unfair competition under the common law of the state of Michigan and other states.

35

**Answer to Allegation 110.**

Denied.

111.    Upon information and belief, KKC's and Elco's acts alleged in this Complaint were willful and intended to cause confusion, mistake or deception.

**Answer to Allegation 111.**

Denied.

112.    As a direct and proximate cause of KKC's and Elco's conduct, Tecumseh has suffered, is suffering and will continue to suffer irreparable damages in an amount to be proved at trial.

**Answer to Allegation 112.**

Denied.

113.    An award of monetary damages alone cannot fully compensate Tecumseh for its injuries, and Tecumseh lacks an adequate remedy at law.

**Answer to Allegation 113.**

Denied.

## COUNT V – VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT (MICHIGAN STATUTORY LAW)

114.    Tecumseh incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

**Answer to Allegation 114.**

36

No answer is necessary because this claim has been dismissed.

115.    KKC's and Elco's sale of KKC products constitutes "trade or commerce" within the meaning of § 445.902(1)(g) of the Michigan Consumer Protection Act ("MCPA"), MCL § 445.901, et seq.

**Answer to Allegation 115.**

No answer is necessary because this claim has been dismissed.

116.    KKC's and Elco's actions as alleged in this Complaint have and are causing confusion or misunderstanding as to the source, sponsorship, approval and/or certification of goods within the meaning of the MCPA. MCL § 445.903(1)(a).

**Answer to Allegation 116.**

No answer is necessary because this claim has been dismissed.

117.    Tecumseh has suffered irreparable harm as a direct and proximate result of KKC's actions.

**Answer to Allegation 117.**

No answer is necessary because this claim has been dismissed.

118.    An award of monetary damages alone cannot fully compensate Tecumseh for its injuries, and Tecumseh lacks an adequate remedy at law.

**Answer to Allegation 118.**

No answer is necessary because this claim has been dismissed.

37

## FURTHER ANSWERS AND AFFIRMATIVE DEFENSES

By way of further Answer and as affirmative defenses, Defendants deny that they are liable to Plaintiff on any of the claims alleged and further deny that Plaintiff is entitled to damages, equitable relief, attorney's fees, pre-judgement interest, or any relief whatsoever and state as follows:

1.      Plaintiff is not entitled to relief because Plaintiff has failed to state a claim upon which relief can be granted.

2.      Plaintiff is not entitled to relief because Defendants have made a descriptive or generic use of Plaintiff's alleged trademarks.

3.      Plaintiff is not entitled to relief because Defendants have made a nominative fair use of Plaintiff's alleged trademarks.

4.      Plaintiff is not entitled to relief because Plaintiff's claims are barred by the doctrine of laches.

5.      Plaintiff is not entitled to relief because Plaintiff's claims are barred by the doctrine of unclean hands.

6.      Plaintiff is not entitled to relief because Plaintiff's claims are barred by the doctrine of waiver or acquiescence.

7.      Plaintiff is not entitled to relief because Plaintiff obtained its trademark registrations fraudulently.

8.      Plaintiff is not entitled to relief because Plaintiff provided

Defendants with a license through express or implied consent.

9.      Plaintiff is not entitled to statutory damages because Defendants'
alleged infringement, if it is infringement at all, is innocent.

10.     Plaintiff is not entitled to relief because Plaintiff's trademark
registrations and alleged common law trademark rights are not valid.

### <u>COUNTER-PLAINTIFFS' COUNTER-CLAIMS AGAINST COUNTER-DEFENDANT TECUMSEH PRODUCTS COMPANY</u>

NOW COMES Counter-Plaintiffs Kulthorn Kirby Public Company Ltd.
("Kulthorn") and Elco Refrigeration Solutions, LLC ("Elco") and for their
Counter-Claims against Defendant Tecumseh Products Company ("Tecumseh")
state the following:

### <u>PARTIES</u>

1.      Kulthorn Kirby Public Company, Ltd. ("Kulthorn") is a limited
public company organized under the laws of Thailand with its principal place of
business in Bangkok, Thailand.

2.      Elco Refrigeration Solutions, LLC ("Elco") is a California limited
liability company organized under the laws of the State of California with its
principal place of business in San Diego, California.

3.      Tecumseh Products Company ("Tecumseh") is a corporation
organized under the laws of the State of Michigan with its principal place of
business in Ann Arbor, Michigan.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, as well as 15 U.S.C. § 1121, because this case concerns a civil action arising under federal trademark law.

5.      This Court has supplemental jurisdiction over the claims in this Counter-Claim that arise under the common law of the State of Michigan pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      This Court has personal jurisdiction over Counter-Defendant Tecumseh because Tecumseh is a corporation organized under the laws of the State of Michigan with its principal place of business in Michigan.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Counter-Defendant Tecumseh resides in this judicial district.

## FACTS

### The parties' businesses

8.      Counter-Plaintiff Kulthorn Kirby was established in 1980 in cooperation between the Simakulthorn Group, a Thai manufacturer of refrigerator and compressor products, Kirby Group Australia, an Australian manufacturer of compressor products, and the Industrial Finance Corporation of Thailand.

40

9.      Kulthorn was created to operate as a manufacturer and seller of compressor products and condensing units for use in refrigeration products; specifically, commercial refrigerators, freezers, water coolers, and air conditioners.

10.     Kulthorn is publicly traded on the Stock Exchange of Thailand and has a variety of holdings, including steel companies, metal product companies, magnet wire companies, and a foundry.

11.     Kulthorn currently employs over 2,000 employees across the world.

12.     Elco is the exclusive distributor of Kuthorn's compressor products within the United States.

13.     Tecumseh was founded by tool and die maker Raymond Herrick in 1934 in Tecumseh, Michigan.

14.     Tecumseh grew rapidly and, at its height, was publicly traded on the NASDAQ stock exchange.

15.     After a series of product missteps and difficulties due to foreign competition, Tecumseh sold several of its product lines to private equity firms in the late 2000's, and, in 2015, Tecumseh was taken private when it was acquired by an affiliate of Mueller Industries, a publicly traded manufacturer, and Atlas Holdings, a private equity firm.

**The history of the parties.**

41

16.     The Simakulthorn family, the founders of Kulthorn, and the owners of the majority of its publicly traded stock, has had a relationship with the Herrick family, the prior owners of Tecumseh, since the early 1970s. That relationship continues to this day.

17.     In November of 1979, Kulthorn-Kirby Company, Ltd., a predecessor in interest to Kulthorn, entered into an exclusive license agreement under which Kulthorn-Kirby Company, Ltd. licensed the exclusive right to "produce in, and only in, Thailand, and not elsewhere, and under Licensee's own trademark, or trade name, Covered Refrigeration Components." See **Exhibit A**, 1979 License Agreement.

18.     "Covered Refrigeration Components" were defined as "any refrigeration component comparable to any type or model of a Current Refrigeration Component…." See **Exhibit A**, 1979 License Agreement.

19.     In turn, "Current Refrigeration Component" was defined as those products "designated with any one of the following Model Numbers, to-wit, AE1320-A, AE1332-A, AE1336-A, AE1360-A, AE1380-A, AE1410-A, and AE1413-A." See **Exhibit A**, 1979 License Agreement.

20.     This exclusive license agreement was amended in 1980, 1984, 1986, 1988, and 1992 to add additional model numbers and to modify the royalty arrangement between the parties.

42

21.     The original 1979 agreement as modified in 1992 continued in full force and effect until 2004.

22.     In 1981, Kulthorn-Kirby Company, Ltd. began manufacturing AE model compressors within Thailand.

23.     By 1986, Kulthorn-Kirby Company, Ltd. had manufactured one million AE model compressors, and, in 1989, it began producing other models, such as AZ, in Thailand.

24.     By 1993, when Kulthorn-Kirby Company, Ltd. began producing AW compressors, it had produced five million AE compressors in Thailand.

## The end of the parties' business relationship

25.     In 2004, Kulthorn Kirby decided to purchase a compressor plant within Thailand from Sanyo subsidiary CCW.

26.     Upon notifying Tecumseh of this purchase, Tecumseh terminated the exclusive license agreement between Tecumseh and Kulthorn-Kirby Company, Ltd. because Tecumseh believed that Kulthorn-Kirby Company, Ltd., in purchasing CCW, violated the agreement between the parties because CCW, prior to purchase, was engaged in the production and sale of refrigeration components not created by Tecumseh.

27.     Despite Tecumseh's termination of its exclusive relationship with Kulthorn-Kirby Company, Ltd., it continued to provide Kulthorn-Kirby

43

Company, Ltd. with compressor products for sale in Thailand "on a case by case basis."

28.     And, when Tecumseh was asked to clarify whether its Blue and Red Indian trademarks could remain on Kulthorn Kirby's buildings in Thailand, Tecumseh responded that it saw "no need to deal with this at this point in time. If in the future it becomes a subject that needs to be addressed we will do so."

29.     Between 2004 and 2013, Kulthorn Kirby continued to produce and sell AE, AW, and AZ model compressors in southeast Asia without complaint from Tecumseh.

30.     In fact, not only was Tecumseh well aware of Kulthorn Kirby's manufacturing and sale of these products, but Mr. Herrick, the majority shareholder in Tecumseh during this time period, was also a large shareholder in Kulthorn Kirby and had explicit knowledge of these activities.

31.     In 2011, Kulthorn Kirby began selling AE, AW, and AZ compressors in the United States through third parties, such as Turbo Air, Coldparts, and Defendant Elco, and directly to original equipment manufacturers.

32.     These actions were also taken with knowledge of and without complaint from Tecumseh.

33.     It was not until 2016, eleven years after Tecumseh terminated its license agreement with Kulthorn Kirby and after Tecumseh was sold to Mueller

Industries and Atlus Holdings, that it first complained of Kulthorn Kirby's use of the AE and AW model numbers.

## Tecumseh files for trademark registration, notifies Kulthorn customers, and then files this lawsuit.

34.     Specifically, on March 10, 2016, Tecumseh sent a demand letter to Kulthorn Kirby requesting that Kulthorn Kirby cease the use of the AE model number.

35.     Subsequently, on March 25, 2016, Tecumseh filed an application for trademark registration of AE, AE2, AW, and AW2 with the United States Patent and Trademark Office. See **Exhibit B**, Tecumseh trademark applications/registrations.

36.     AE, AE2, and AW were granted registration with the USPTO on November 1, 2016. See **Exhibit B**, Tecumseh trademark applications/registrations.

37.     AW2 is still pending registration with the USPTO. See **Exhibit B**, Tecumseh trademark applications/registrations.

38.     After filing its applications for trademark registration, Tecumseh contacted customers of Kulthorn to inform them that Kulthorn had infringed upon its trademark rights, that it was suing Kulthorn, and that Kulthorn's customers should not do business with Kulthorn unless they wanted to also be brought into

45

the lawsuit.

39.     Tecumseh's false representation that it was suing Kulthorn and that Kulthorn's customers would face liability if they did not stop purchasing from Kulthorn resulted in a substantial loss of business from Kulthorn's existing customers Johnstone Supply, Advanced Refrigeration, 3D HVAC, CT Supply, and Mechanical Supply.

40.     After filing its applications for trademark registration and falsely representing to Kulthorn's clients that they would be subject to a lawsuit if they continued to work with Kulthorn, Plaintiff filed this lawsuit on January 25, 2017.

## COUNT I – TRADEMARK CANCELLATION (AE, AE2, AND AW TRADEMARKS)

41.     Counter-Plaintiffs restate all prior paragraphs as if fully restated herein.

42.     Counter-Defendant has filed for and obtained registration of the AE trademark for use in association with "[e]lectric compressors, compressors for commercial refrigeration and air conditioning applications" under Registration No. 5,072,832 ("AE Trademark").

43.     Counter-Defendant has filed for and obtained registration of the AE2 trademark for use in association with "[e]lectric compressors, compressors for commercial refrigeration and air conditioning appliances" under Registration No. 5,072,834 ("AE2 Trademark").

46

44.     Counter-Defendant has filed for and obtained registration of the AW trademark for use in association with "[e]lectric compressors, compressors for commercial refrigeration and air conditioning appliances" under Registration No. 5,072,835 ("AW Trademark").

45.     Counter-Defendant's continued registration of the asserted AE, AE2, and AW marks has harmed and continues to harm Counter-Plaintiffs.

46.     Counter-Defendant's alleged AE, AE2, and AW marks are used merely as model, style, or grade designations and are not registerable as trademarks because they have not acquired distinctiveness.

47.      Counter-Defendant's alleged AE, AE2, and AW marks are not registerable as trademarks because they do not serve to identify and distinguish Counter-Defendant's goods from similar goods manufactured and/or sold by others.

48.     Upon applying for registration of the AE, AE2, and AW marks with the US Patent and Trademark Office, Counter-Defendant was inappropriately not required to submit evidence that those marks are not descriptive and have acquired secondary meaning.

49.     Counter-Defendant's alleged AE, AE2, and AW marks are descriptive and have not acquired secondary meaning in the minds of the consuming public and, therefore, should not have been granted registration by the

47

US Patent and Trademark Office.

50.     Alternatively, Counter-Defendant's asserted AE, AE2, and AW trademarks comprise matter that, as a whole, is functional and cannot serve as trademarks because they directly describe the size and function of Counter-Defendant's products.

51.     Counter-Plaintiff hereby requests that the Court cancel Counter-Defendant's AE, AE2, and AW trademark registrations on the grounds that they are descriptive and do not serve to identify the origin or source of Counter-Defendant's goods.

52.     Counter-Plaintiffs also hereby request that the Court cancel Counter-Defendant's AE, AE2, and AW trademark registrations on the grounds that they are functional and cannot serve as trademarks.

## COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

53.     Counter-Defendants restate all prior paragraphs as if fully restated herein.

54.     Counter-Plaintiffs had existing business relationships or expectancies with their customers, including Johnstone Supply, Advanced Refrigeration, 3D HVAC, CT Supply, and Mechanical Supply.

55.     Counter-Defendant had specific knowledge of these existing

48

business relationships or expectancies.

56.     Counter-Defendant, by informing these customers that they would be sued or otherwise face liability should they continue to do business with Counter-Plaintiffs, intentionally interfered in these existing business relationships or expectancies.

57.     Counter-Defendant's interference caused the termination of or a reduction in Counter-Plaintiffs' business relationships or expectancies with these specifically identified customers.

58.     As a result of this loss of business relationships or expectancies, Counter-Plaintiffs have been damaged.

**WHEREFORE**, Counter-Plaintiff requests this honorable Court grant the following relief:

A.  That Counter-Defendant Tecumseh and all persons acting in concert with it be preliminarily and permanently enjoined from tortuously interfering with Counter-Plaintiffs' business relationships and expectancies;

B.  That Counter-Plaintiffs receive and recover from Counter-Defendant all damages sustained, including, but not limited to, Counter-Plaintiff's actual damages, punitive damages, and Counter-Defendant's profits;

49

C.  That Counter-Defendant be ordered to pay Counter-Plaintiffs' reasonable costs, expenses, and attorney fees incurred in prosecuting this action, pursuant to 15 U.S.C.§ 1117(a);

D.  That Counter-Defendant's AE, AE2, and AW trademarks be cancelled pursuant to 15 USC § 1119.

E.  That Counter-Plaintiffs be awarded pre- and post-judgment interest to the maximum extent allowed by law; and

F.  That Counter-Plaintiffs be awarded such other and further relief to which they may be justly entitled.

## JURY DEMAND

Counter-Plaintiffs hereby request a trial by jury for all eligible counts contained within this Counterclaim.

Dated:7/24/2017

By: /s/ John Di Giacomo
John Di Giacomo
Revision Legal, PLLC
109 E. Front St.
Suite 309
Traverse City, MI 49684
231-714-0100
john@revisionlegal.com

50

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 7/24/2017, I electronically filed the foregoing Defendant's Answer and Counterclaim using the ECF system which has provided notice to all attorneys of record.

Dated: 7/24/2017

By: /s/ John Di Giacomo
John Di Giacomo
Revision Legal, PLLC
109 E. Front St.
Suite 309
Traverse City, MI 49684
231-714-0100
john@revisionlegal.com